UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| THE LOUISIANA COMMUNITY DEVELOPMENT CAPITAL INVESTMENT FUND, INC. AND FAITH INVESTMENTS, LLC | * | CIVIL ACTION NO.  14-2212 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| THE GRAMBLING LEGENDS SQUARE TAXING DISTRICT | * | MAG. JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), is a motion to dismiss pursuant to Rule 12 [doc. # 8], both for failure to state a claim upon which relief can be granted, and for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(6) & (1), respectively, filed by defendant, The Grambling Legends Square Taxing District.  The motion is opposed.  For reasons assigned below, it is recommended that the motion to dismiss be GRANTED IN PART and DENIED IN PART.

Synopsis

On June 30, 2014, plaintiffs, the Louisiana Community Development Capital Fund, Inc. ("CapFund") and Faith Investments, LLC ("Faith Investments") filed the instant civil rights action under 42 U.S.C. § 1983 against The Grambling Legends Square Taxing District (the "District").  Plaintiffs allege that the District violated their right to equal protection under the Fourteenth Amendment to the U.S. Constitution by refusing to entertain their proposal to develop a hotel project to be funded by tax incremental financing, despite approving funding for a similar

hotel project. Plaintiffs petition the court to find that the District's action/inaction violated the Fourteenth Amendment and order the District to approve plaintiffs' proposed special taxing district financial resolution, which seeks approximately $2,640,000 in incremental bond financing. *See* Compl., Exh. 6. In the alternative, plaintiffs request an award of compensatory and punitive damages. (Compl., Req. for Relief). They also seek costs, expenses, and reasonable attorney's fees.

## Discussion

### I. The Motion to Dismiss

On July 23, 2014, the District filed the instant motion to dismiss under Rule 12 – principally for failure to state a claim upon which relief can be granted. In support of its motion, the District argued that plaintiffs failed to allege requisite facts to support the elements of either a due process or equal protection claim.[1] The District further argued that it is immune from suit pursuant to Louisiana's discretionary function doctrine, Louisiana Revised Statute 9:2798.1.[2] In addition, because plaintiffs' allegations fail to rise to the level of a violation of the U.S. Constitution or any federal statute, the District concludes that the complaint necessarily does not "arise under" federal law, and therefore, the court does not enjoy subject matter jurisdiction. *See* M/Dismiss, ¶¶ 4-5.

On August 13, 2014, plaintiffs filed their opposition memorandum, wherein they argued,

---

[1] Plaintiffs, however, do not endeavor to state a due process claim. *See* discussion, *infra*.

[2] Discretionary acts immunity, however, applies solely to state law claims. It does not preclude liability under 42 U.S.C. § 1983. *Mills v. City of Shreveport*, Civ. Action No. 13-2670, 2014 WL 4924909, at *4 (W.D. La. Sept. 30, 2014) (citations omitted). As plaintiffs in this case do not assert any state law claims, discretionary acts immunity is inapplicable.

*inter alia*, that the District acted adversely to plaintiffs' project proposal on account of plaintiffs' race. Plaintiffs also re-urged the allegations in their complaint, and maintained that the District did not proffer a rational justification for its differential treatment of their project. The District filed its reply on August 28, 2014. The matter is before the court.

## II.     Subject Matter Jurisdiction

Defendant contends that the court lacks subject matter jurisdiction because plaintiffs' allegations do not state a claim for relief under the U.S. Constitution or any federal statute. It is manifest, however, that

> [j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

*Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 776 (1946).

Although "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction . . ." such is not the case where the alleged constitutional violations form the sole basis for the relief sought. *Id*.

Here, plaintiffs invoked subject matter jurisdiction via the federal question and civil rights jurisdictional statutes, 28 U.S.C. §§ 1331 and 1343. (Compl., ¶ 1). Moreover, plaintiffs assert solely a constitutional violation and seek relief exclusively under 42 U.S.C. § 1983. *Id*., ¶ 47. "The assertion of a claim under a federal statute alone is sufficient to empower the District

Court to assume jurisdiction over the case . . ." *Cervantez v. Bexar County Civil Service Commission*, 99 F.3d 730, 733 (5th Cir. 1996) (quoting, *Holland/Blue Streak v. Barthelemy*, 849 F.2d 987, 988-989 (5th Cir. 1988)). Accordingly, the court enjoys subject matter jurisdiction, and will proceed to address the sufficiency of plaintiffs' allegations on the merits.

### III.     12(b)(6) Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might

otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, ___ U. S. ___, 131 S. Ct. 1289, 1296 (2011).[3]

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

### IV. Plaintiffs' Allegations and Documents Referenced in the Complaint

Plaintiff, the CapFund, is an "African-American Louisiana 501(c)(3) tax exempt non-profit organization . . ." (Compl., ¶ 3).

---

[3] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

Plaintiff, Faith Investments, is a "majority African American owned Louisiana Limited Liability Company . . ." comprised of two members: the CapFund (51%) and attorney/developer, Jules B. LeBlanc III (49%). *Id*., ¶¶ 5-6.

Defendant, the District, is a "special taxing district and political subdivision of the state . . . created in the city of Grambling, parish of Lincoln." *Id*., ¶ 6; La. R.S. § 33.9038.66.

> The purpose of the District is to foster "cooperative economic development among the city, the district, the state, **owners of property within the district**, and other entities as permitted by law in order to provide for the following:
>
> (1) The construction, infrastructure, renovation, and development of certain properties within the city of Grambling, including a hotel and Legends Square and to provide for economic development for the city of Grambling and the district.
>
> (2) The utilization of sales tax increment financing[4] of the costs and expenses associated with infrastructure improvements constructed in accordance with the Legends Square Development Plan for the commercial development of **all or any portion of the property located within the boundaries of the district** as provided for in Subsection H of this Section."

La. R. S. § 33:9038.66(C) (emphasis added); *see also* Compl., ¶ 11.

The District is composed of six parcels or tracts of land located in the City of Grambling. (Compl., ¶ 8; La. R. S. § 33:9038.66(B)). The CapFund owns Parcel No. 6 (described as 0.223 acres, including a portion of the I-20 interchange) within the District. (Compl., ¶¶ 9, 16; La. R. S. § 33:9038.66(B)). On January 4, 2014, the CapFund executed an option to sell the foregoing property to Faith Investments for purposes of constructing and operating a Mainstay Suites Hotel

---

[4] "Tax increment financing (TIF) is a tool used to finance public investments and infrastructure improvements needed for economic development in specific geographical areas, usually blighted or economically depressed areas, or rather, to finance the redevelopment of economically depressed or blighted areas, without causing any additional tax burden on local taxpayers." *Denham Springs Econ. Dev. Dist. v. All Taxpayers, Prop. Owners & Citizens of Denham Springs Econ. Dev. Dist.*, 945 So. 2d 665, 668 (La. 2006) (citation omitted).

Annex and other infrastructure. *Id.*[5]

The City of Grambling also owned a tract of land within the District on which it or its affiliates plan to construct and operate a Marriott Hotel and Legends Square Retail Center. (Compl., ¶ 10).

By letter dated February 20, 2014, Faith Investments' minority shareholder, Jules LeBlanc, III, wrote to the Board of Commissioners for the District (the "Board") to advise the body that Faith Investments had received a franchise to own and operate a MainStay Suites Hotel. (Compl., ¶18; Exh. 3). LeBlanc added that "*if this property is covered by the Taxing District . . .*" then he would like the Board to enact an ordinance permitting the hotel occupancy tax generated by the hotel to be used to finance the construction of the development. *Id*. (emphasis added). He also asked the Board to issue bonds up to the full amount of the hotel occupancy tax increments. *Id*. LeBlanc noted in his letter that Mayor Jones had advised him that their request would be on the agenda for the Board's March 5, 2014, meeting. (Compl., Exh. 3). Toward that end, LeBlanc requested all necessary documentation to present the request for funding to the Board. *Id*. He concluded by stating that "*if the Taxing District does not cover the Grambling Plaza property please advise prior to the meeting*." *Id*. (emphasis added).

In a May 22, 2014, e-mail to the Grambling Mayor, Jules LeBlanc asked that Faith Investments be placed on the agenda for the Board's June 5, 2014, meeting. (Compl., ¶ 20; Exh. 4). Despite having failed to receive requested policies and rule-making procedures from the Board, LeBlanc nonetheless managed to attach a proposed financing resolution and description

---

[5] Choice Hotels subsequently awarded Faith Investments a franchise to own and operate a MainStay Suites Hotel. (Compl., ¶ 17; Exh. P-2).

7

of the CapFund's property to be considered at the June 5, 2014, meeting. (Compl., ¶¶ 19, 22; Exh. 5). The financing proposal totaled $3,300,000, including $2,640,000 in Incremental Bond Financing. (Compl., 24; Exh. 6).

On May 23, 2014, plaintiffs' attorney, Ernest Johnson, e-mailed Mayor Jones, President Copeland, and the District's attorney, Pamela Breedlove. (Compl., ¶ 25, Exh. 7). Johnson explained that LeBlanc's request to appear before the Board was solely to discuss support for a development to be located within the District at Grambling Plaza. *Id*. He noted that LeBlanc wanted an opportunity to appear before the Grambling City Council to obtain support for the projects. *Id*.

That same date, Breedlove responded to Johnson that

> [a]s explained in the attached letter and discussed at the April meeting, the Legends Square TIF District cannot levy or collect occupancy taxes or utilize sales tax increment financing on property not located within its boundaries. Therefore, the Legends Square TIF District cannot legally adopt the resolution you have requested of it. The City cannot legally levy hotel occupancy taxes.

(Compl., ¶¶ 26-27; Exh. 8).

Breedlove concluded that because the District and the City of Grambling could not legally provide the assistance requested by plaintiffs, there was nothing to be placed on the agendas for the Board or City Council meetings. *Id*. She attached a copy of the letter that she had sent to LeBlanc regarding LeBlanc's request to be placed on the agendas. *Id*. The letter stated, in pertinent part, that,

> [w]ith regards [sic] to your request for a resolution of the TIF District regarding "the utilization of the Sales Tax Increment Financing Hotel Occupancy Tax," that request is also beyond the authority of the TIF District Board. As you will recall, it was determined at the TIF District meeting in April that all but a small corner of the property at issue is not located within the TIF District. The TIF District simply does not have the authority to operate outside of its boundaries. The

8

> statute creating the TIF District permits the utilization of sales tax increment financing of the costs and expenses associated with infrastructure improvements of "all or any portion of the property **located within the boundaries of the district**." La. R.S. 33:9038.66(C)(2) (emphasis added). This statute also authorized the TIF District to "levy and collect a tax upon the occupancy of hotel rooms, motel rooms, and overnight camping facilities **within the area provided for in Paragraph (B)(1) of this Section**" which establishes the physical boundaries of the TIF District. La. R.S. 33:9038.66(F)(1)(emphasis added).

(May 21, 2014, Facsimile Letter from Pam Breedlove to Jules LeBlanc; Def. M/Dismiss, Exh. D-2).[6]

Johnson promptly replied to Breedlove's e-mail by reciting Louisiana Revised Statute § 33:9038.66(B)'s description of Parcel No. 6, and claiming that it included Faith Investments' property. (Compl., ¶ 30; Exh. 9). Thus, Johnson maintained that plaintiffs had the right to appear before the Board, and threatened to consider other legal options if they were not permitted to do so. *Id*.

Although plaintiffs' attorney, Ernest Johnson, was not permitted to appear formally before the Board at the June 5, 2014, meeting, he was allowed to address the Board during the public comment period in which he took the opportunity to present a copy of the Lincoln Parish Assessor's site map of the Cap Fund's TIF property identified as Parcel No. 18183147002. (Compl., ¶ 31; Pl. Exh. 11).[6] The two page exhibit depicts Parcel No. 18183147002 as a small triangle of land, without any existing buildings on it. *Id*. The overhead photograph of the site demonstrates the limited size of Parcel No. 6. *Id*.

At the June 5, 2014, Grambling City Council meeting, the City Council donated property

---

[6] The court may consider this letter in connection with the instant motion to dismiss because plaintiffs referenced the letter in their complaint, and because the Board's refusal to consider plaintiffs' application for TIF financing is central to their claim. *See Collins, supra*.

[6] According to the statute, Parcel No. 6 was identified by the Lincoln Parish Tax Assessor in 2011 as Parcel No. 18183147002. La. R. S. § 33:9038.66(B)(6).

located within the special taxing district to the District for purposes of constructing a Marriott Hotel and Legends Square Retail Center Project (the "Marriott Project"). (Compl., ¶ 36; Pl. Exh. 12).

Plaintiffs contend that their proposal for a MainStay Suites Hotel and Annex Complex ("MainStay Suites Project") to be built partially on land within the District is similarly situated to the Marriott and Legends Square Project that was owned by the City of Grambling and transferred to the District or its affiliates. (Compl., ¶ 38). Plaintiffs allege that the District arbitrarily, capriciously, and unreasonably treated their proposal less favorably than the comparable project in which the District enjoys an interest. *Id*., ¶¶ 39-40, 54. In addition, the Board acted with ill will when it denied plaintiffs the right to appear at the June 5, 2014, meeting. *Id*., ¶ 58. Plaintiffs conclude that the District violated their right to equal protection by failing to treat their project the same as the similarly situated Marriott Project. *Id*., ¶ 60.

**V.      Equal Protection**

Section 1983 prescribes that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983. However, § 1983 does not create any substantive rights; it merely provides a remedy for the rights designated therein. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted). Thus, "[t]o state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). The first inquiry is whether

plaintiff has alleged a violation of a constitutional right at all.  *Id.  Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

Here, plaintiffs allege that the District violated their right to equal protection by arbitrarily and capriciously denying them the right to submit an application and/or the opportunity to appear before the Board to obtain financing for their hotel project.[7]  In their complaint, plaintiffs assert a "class of one" (or possibly two) claim because the District treated them differently than the Marriott Project without a rational basis.  In their opposition to the motion to dismiss, plaintiffs further argue that the District treated them differently on account of their race (African-American).[8]

The Equal Protection Clause of the Fourteenth Amendment essentially requires a state actor to treat all similarly situated persons alike.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985).  To state an equal protection claim, a § 1983 plaintiff must allege either that "(a) a state actor intentionally discriminated against [him]

---

[7] The court notes that plaintiffs do not assert a due process claim.  *See* Compl.  In any event, "[t]here can be no deprivation of substantive or procedural due process in the absence of a protected property right or liberty interest.  *Stark v. Univ. of S. Mississippi*, Civ. Action No. 13-0031, 2014 WL 1235346 (S.D. Miss. Mar. 25, 2014) (citations omitted).  Plaintiffs do not identify any protected property right or liberty interest that is implicated here.  Also, the Louisiana Supreme Court has recognized that economic development district legislation does not create protected property rights or liberty interests.  *See Denham Springs Econ. Dev. Dist., supra*.

[8] There is some question whether a corporate entity has a racial identity at all.  The Supreme Court has stated, albeit in dictum, that a corporation has no racial identity, and cannot be the direct target of discrimination.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263, 97 S. Ct. 555, 562 (1977).  More recently, at least in the context of 42 U.S.C. § 1981, courts have recognized that "[w]hen a corporation has acquired a racial identity, either as a matter of law or by imputation, then it can be the direct target of discrimination."  *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1059 (9th Cir. 2004).  In this case, it is not clear that the plaintiff-entities have acquired racial identities.  Nonetheless, for purposes of this motion, the court will assume that plaintiffs are African-American entities.

because of membership in a protected class [,] or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Texas Dep't of Ins. – Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (citations and internal quotation marks omitted). Thus, to survive the pleading stage on a race-based discrimination claim under the Equal Protection Clause a plaintiff must allege facts to show that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *See Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012) (citations omitted).

Here, aside from representing that plaintiffs are African-American or majority-owned African-American entities, plaintiffs' complaint is completely devoid of any *factual* allegations to suggest that any purported unequal treatment by the District stemmed from discriminatory intent or animus. Consequently, plaintiffs' complaint does not state a claim for race-based discrimination under the Equal Protection Clause. *See Bowlby, supra* (no factual allegations that defendants' actions were the result of intentional discrimination); *Smith v. Kimbhal*, 421 F. App'x 377, 379 (5th Cir. 2011) (conclusory assertions of improper motive or retaliatory animus do not suffice to overcome a Rule 12(b)(6) dismissal).

Plaintiffs, however, also advance their equal protection claim under a "class of one" theory which does not require membership in a protected class or group. *Mata v. City of Kingsville*, TX, 275 F. App'x 412, 415 (5th Cir. 2008) (citation omitted). Further, the Fifth Circuit recognizes three different types of "class of one" claims: "selective enforcement"; "personal vindictiveness"; and adverse zoning permit decisions. *Lindquist v. City of Pasadena, Tex.*, 656 F. Supp. 2d 662, 685 (S.D. Tex. 2009), *affirmed* 669 F.3d 225 (5th Cir. 2012) (citing

*Mikeska v. City of Galveston*, 451 F.3d 376, 381 n.4 (5th Cir. 2006)). Only the first two types of "class of one" claims require a showing of improper motive, animus, or ill will. *See Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 388 n.2 (5th Cir. 2008) ("*Lindquist I*") and *Mikeska,* 451 F.3d at 381 n.4.[9]

However, the District's alleged refusal to authorize or even consider plaintiffs' application for TIF financing is most analogous to an adverse permitting decision, which requires plaintiffs to show that they were treated differently than another similarly situated entity/person, with no rational basis for the distinction. *Mikeska, supra*; *Bush v. City of Gulfport, Miss.*, 454 F. App'x 270, 280-81 (5th Cir. 2011). Nevertheless, to prevail on their claim, plaintiffs still "must carry the heavy burden of negativ[ing] any reasonably conceivable state of facts that could provide a rational basis for their differential treatment." *Lindquist I, supra* (citations and internal quotation marks omitted). Further, "[u]nder the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim." *Unruh v. Moore*, 326 F. App'x 770, 772 (5th Cir. 2009) (citation omitted). Indeed,

> states are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude . . . in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendmt.

*City of New Orleans v. Dukes*, 427 U.S. 297, 303-04, 96 S. Ct. 2513, 2516 (1976) (citations omitted).

In this case, plaintiffs' complaint fails to set forth requisite facts to support either element of their "class of one" equal protection claim. First, plaintiffs' alleged comparator is the Marriott Project. *See* Compl., ¶ 38. According to plaintiffs, however, the Marriott Project was to be

---

[9] An element that is lacking in factual support here.

constructed on land formerly owned by the City of Grambling that the City had transferred to the District or its affiliates for purposes of building the Marriott Project. Thus, the City was a partner or participant in the development of the Marriott Project, which furthered the stated purpose of the District's enabling legislation, i.e. to foster "cooperative economic development among the city, the district, the state, owners of property within the district, and other entities . . ." In contrast, there are no allegations that plaintiffs' proposed MainStay Suites Project was a cooperative endeavor with the City.[10]

Furthermore, although somewhat inconsistent at times, plaintiffs acknowledge that their proposed MainStay Suites Project is to be constructed only *partially* on TIF property. (Compl., ¶ 38A). Review of plaintiffs' Exhibit No. 11 confirms that only a small portion of the proposed MainStay Suites Project actually lies within the TIF District. (Compl., Exh. 11). In contrast, the complaint does not contain any allegations that their purported comparator, the Marriott Project, also is to be built on land only partially located within the District.

This distinction is material because, according to the enabling statute, "sales tax increment financing" is authorized for "costs and expenses associated with infrastructure improvements **constructed in accordance with the Legends Square Development Plan** for the commercial development of **all or any portion of the property located within the boundaries of the district** as provided for in Subsection H of this Section." La. R. S. § 33:9038.66(C) (emphasis added); *see also* Compl., ¶ 11. Simply put, sales tax increment financing is not authorized to fund development on property located outside the boundaries of the District. This

---

[10] Albeit, plaintiffs sought to finance their project via sales taxes and bonds. Moreover, the City will benefit from additional taxes generated, after financing costs.

distinction also happens to be the very reason why the District did not permit plaintiffs to present their proposed financing ordinance or resolution to the Board. *See* May 21, 2014, Breedlove Letter; M/Dismiss, Exh. D-2. Plaintiffs do not set forth any argument supported by *facts* to show that the District's stated explanation for its differential treatment of plaintiffs' proposal was irrational or arbitrary. *See L & F Homes & Dev., L.L.C. v. City of Gulfport, Miss.*, 538 F. App'x 395, 402-03 (5th Cir. 2013), *cert. denied*, ___ U.S. ___, 134 S.Ct. 1038 (2014) (ordinance's differential treatment of property depending on the use to which the property is put is not irrational).[11]

### Conclusion

As instructed by *Iqbal*, the court has accorded no weight to the generous dose of conclusory allegations set forth in plaintiffs' complaint. *See Iqbal, supra*. Plaintiffs' remaining allegations contain no facts sufficient to confer plausibility upon their equal protection claim. *Id*.; *see also Jabary v. City of Allen*, 547 F. App'x 600, 605 (5th Cir. 2013) (plaintiff's statements fail to "nudge his claim of purposeful discrimination across the line from conceivable to plausible"). Instead, the complaint remains no more than "a formulaic recitation of the elements of a cause of action," which does not satisfy the Rule 8 pleading standard. *Id*. Under these circumstances, there is no reasonable expectation that discovery will reveal evidence to support the missing elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.[12]

---

[11]   In the due process context, the Supreme Court has recognized that a city attorney's directive to the city engineer to withhold a building permit was "eminently rational" where, at the time, the permit would transgress the city charter. *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198-99, 123 S. Ct. 1389, 1396 (2003).

[12]   While plaintiffs naturally and understandably are disappointed with their failure to qualify for TIF funding, plaintiffs simply do not allege facts sufficient to plausibly demonstrate that the

Nonetheless, the court is obliged to "freely" grant leave to amend "when justice so requires." Fed.R.Civ.P. 15(a)(2). Furthermore, "[d]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . . " *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Here, it is conceivable that plaintiffs can cure their deficient pleadings via amendment. Accordingly, the instant recommendation of dismissal is subject to plaintiffs' opportunity to seek leave of court to amend their complaint with a proposed pleading that cures the deficient allegations – *within the deadline to file objections to this report and recommendation*.

In the interim, and in the absence of a curative amendment,

IT IS RECOMMENDED that the Rule 12 motion to dismiss [doc. # 8] filed by defendant, The Grambling Legends Square Taxing District, be GRANTED IN PART, and that plaintiffs' complaint be DISMISSED WITH PREJUDICE, in its entirety, for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).

IT IS FURTHER RECOMMENDED that defendant's motion, insofar as it urges dismissal for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), otherwise be DENIED,

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of

---

District's actions transgressed the Constitution.

filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 8th day of December 2014.

/s/ Karen L. Hayes

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE