UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| THE LOUISIANA COMMUNITY DEVELOPMENT CAPITAL INVESTMENT FUND, INC. AND FAITH INVESTMENTS, LLC | * | CIVIL ACTION NO. 14-2212 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| THE GRAMBLING LEGENDS SQUARE TAXING DISTRICT | * | MAG. JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), is a motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6) [doc. # 21] filed by defendant The Grambling Legends Square Taxing District. The motion is opposed. For reasons assigned below, it is recommended that the motion be GRANTED.

I.      Procedural Background

On June 30, 2014, plaintiffs, the Louisiana Community Development Capital Fund, Inc. ("CapFund") and Faith Investments, LLC ("Faith Investments") filed the instant civil rights action under 42 U.S.C. § 1983 against The Grambling Legends Square Taxing District (the "District"). In their original complaint, plaintiffs alleged that the District violated their right to equal protection under the Fourteenth Amendment to the U.S. Constitution by refusing to entertain their proposal to develop a hotel project to be funded by tax incremental financing, despite approving funding for a purportedly similar hotel project. *See* Compl. Plaintiffs

petitioned the court to find that the District's action/inaction violated the Fourteenth Amendment and, consequently, order the District to approve plaintiffs' proposed special taxing district financial resolution for approximately $2,640,000 in incremental bond financing. *See* Compl., Exh. 6. In the alternative, plaintiffs asked for an award of compensatory and punitive damages. (Compl., Req. for Relief). They also sought costs, expenses, and reasonable attorney's fees.

On July 23, 2014, the District filed a motion to dismiss under Rule 12 – principally for failure to state a claim upon which relief can be granted. In support of its motion, the District argued, *inter alia*, that plaintiffs failed to allege requisite facts to support the elements of either a due process or equal protection claim.[1] On December 8, 2014, the undersigned issued a report recommending that the court grant the District's motion to dismiss on the grounds that it failed to state a claim upon which relief can be granted. *See* Dec. 8, 2014, R&R [doc. # 15]. However, because it was conceivable that plaintiffs could cure their deficient pleadings via amendment, the recommendation of dismissal was subject to plaintiffs' opportunity to seek leave of court to amend their complaint to cure the deficient allegations. *Id*.

Neither side filed objections to the report and recommendation.[2] Instead, on January 2, 2015, plaintiffs obtained leave of court to file an amended complaint. [doc. #s 18-20]. The new pleading changed various paragraphs of the original complaint by 1) adding a Fourteenth Amendment due process claim for the "taking" of plaintiffs' land by placing it in the District

---

[1] Plaintiffs, however, did not assert a due process claim in their original complaint. *See* discussion, *infra*.

[2] The District Court ultimately declined to adopt the original report and recommendation because plaintiffs filed an amended complaint and defendant filed a new motion to dismiss. *See* Feb. 13, 2015, Judgment [doc. # 24] and discussion, *infra*.

without notice or plaintiffs' consent; 2) deleting plaintiffs' "class of one" equal protection claim; 3) formally including conclusory allegations that the District discriminated against plaintiffs because of their status as African-American businesses; and 4) clarifying that plaintiffs' request for funding from the District pertained to property located within the District. (Amend. Compl. [doc. # 20].

On January 22, 2015, the District filed the instant motion to dismiss for failure to state a claim upon which relief can be granted in which it re-urged its successful arguments from its prior motion and added new grounds to address plaintiff's amended pleading. Plaintiffs filed their opposition on February 13, 2015. [doc. # 25]. The District did not seek leave to file a reply, and the time to do so has lapsed. *See* Notice of Motion Setting [doc. # 22]. Thus, the matter is ripe.

## II. Plaintiffs' Allegations (as Amended) and the Documents Referenced in the Complaint[3]

Plaintiff, the CapFund, is an "African-American Louisiana 501(c)(3) tax exempt non-profit organization . . ." (Compl., ¶ 3). Plaintiff, Faith Investments, is a "majority African American owned Louisiana Limited Liability Company . . ." comprised of two members: the CapFund (51%) and attorney/developer, Jules B. LeBlanc III (49%). *Id*., ¶¶ 5-6.

Defendant, the District, is a "special taxing district and political subdivision of the state . .

---

[3] Plaintiffs' amended complaint is captioned, "Amendment to Complaint." Although the amended pleading changes selected paragraphs of the original complaint, it never actually adopts or incorporates by reference the earlier pleading. Technically, then, the amended complaint supersedes the original complaint and renders it of no legal effect. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Nonetheless, to give effect to plaintiffs' apparent intent (and also to obviate the need for a second amended complaint) the court will consider the original complaint, as amended, and the exhibits.

. created in the city of Grambling, parish of Lincoln." *Id*., ¶ 6; La. R.S. § 33.9038.66.

> The purpose of the District is to foster "cooperative economic development among the city, the district, the state, **owners of property within the district**, and other entities as permitted by law in order to provide for the following:
>
> (1) The construction, infrastructure, renovation, and development of certain properties within the city of Grambling, including a hotel and Legends Square and to provide for economic development for the city of Grambling and the district.
>
> (2) The utilization of sales tax increment financing[4] of the costs and expenses associated with infrastructure improvements constructed in accordance with the Legends Square Development Plan for the commercial development of **all or any portion of the property located within the boundaries of the district** as provided for in Subsection H of this Section."

La. R. S. § 33:9038.66(C) (emphasis added); *see also* Compl., ¶ 11.

The District is composed of six parcels or tracts of land located in the City of Grambling. (Compl., ¶ 8; La. R. S. § 33:9038.66(B)). The CapFund owns Parcel No. 6 (described as 0.223 acres, including a portion of the I-20 interchange), which is located within the District. (Compl., ¶¶ 9, 16; La. R. S. § 33:9038.66(B)). On January 4, 2014, the CapFund executed an option to sell the foregoing parcel of land to Faith Investments for purposes of constructing and operating a Mainstay Suites Hotel Annex and other infrastructure. *Id*.[5]

The City of Grambling also owned a tract of land within the District on which it or its affiliates planned to construct and operate a Marriott Hotel and Legends Square Retail Center.

---

[4] "Tax increment financing (TIF) is a tool used to finance public investments and infrastructure improvements needed for economic development in specific geographical areas, usually blighted or economically depressed areas, or rather, to finance the redevelopment of economically depressed or blighted areas, without causing any additional tax burden on local taxpayers." *Denham Springs Econ. Dev. Dist. v. All Taxpayers, Prop. Owners & Citizens of Denham Springs Econ. Dev. Dist.*, 945 So. 2d 665, 668 (La. 2006) (citation omitted).

[5] Choice Hotels subsequently awarded Faith Investments a franchise to own and operate a MainStay Suites Hotel. (Compl., ¶ 17; Exh. P-2).

(Compl., ¶ 10).

By letter dated February 20, 2014, Faith Investments' minority shareholder, Jules LeBlanc, III, wrote to the Board of Commissioners for the District (the "Board") to advise the body that Faith Investments had received a franchise to own and operate a MainStay Suites Hotel. (Compl., ¶18; Exh. 3). LeBlanc added that "*if this property is covered by the Taxing District . . .*" then he would like the Board to enact an ordinance permitting the hotel occupancy tax generated by the hotel to be used to finance the construction of the development. *Id*. (emphasis added). He also asked the Board to issue bonds up to the full amount of the hotel occupancy tax increments. *Id*. LeBlanc noted in his letter that Mayor Jones had advised him that their request would be on the agenda for the Board's March 5, 2014, meeting. (Compl., Exh. 3). Toward that end, LeBlanc requested all necessary documentation to present the request for funding to the Board. *Id*. He concluded by stating that "*if the Taxing District does not cover the Grambling Plaza property please advise prior to the meeting.*" *Id*. (emphasis added).

In a May 22, 2014, e-mail to the Grambling Mayor, Jules LeBlanc asked that Faith Investments be placed on the agenda for the Board's June 5, 2014, meeting. (Compl., ¶ 20; Exh. 4). Despite having failed to receive requested policies and rule-making procedures from the Board, LeBlanc nonetheless managed to attach a proposed financing resolution and description of the CapFund's property to be considered at the June 5, 2014, meeting. (Compl., ¶¶ 19, 22; Exh. 5). The proposed resolution sought

> financial support in the form of sales tax increment financing and hotel occupancy tax, for the construction and development of the hotel project to be known as Grambling MainStay Suites Hotel Visitors Center Complex (the "Project"), **a portion of which Project is intended to be constructed on the current site that is part of the Grambling Square Taxing District** . . .

5

(Compl., Exh. 5) (emphasis added).[6]

The financing proposal totaled $3,300,000, including $2,640,000 in Incremental Bond Financing. (Compl., 24; Exh. 6).

On May 23, 2014, plaintiffs' attorney, Ernest Johnson, e-mailed Mayor Jones, President Copeland, and the District's attorney, Pamela Breedlove. (Compl., ¶ 25, Exh. 7). Johnson explained that LeBlanc's request to appear before the Board was solely to discuss support for a development to be located within the District at Grambling Plaza. *Id*. He noted that LeBlanc wanted an opportunity to appear before the Grambling City Council to obtain support for the projects. *Id*.

That same date, Breedlove responded to Johnson that

> [a]s explained in the attached letter and discussed at the April meeting, the Legends Square TIF District cannot levy or collect occupancy taxes or utilize sales tax increment financing on property not located within its boundaries. Therefore, the Legends Square TIF District cannot legally adopt the resolution you have requested of it. The City cannot legally levy hotel occupancy taxes.

(Compl., ¶¶ 26-27; Exh. 8).

Breedlove concluded that because the District and the City of Grambling could not legally provide the assistance requested by plaintiffs, there was nothing to be placed on the agendas for the Board or City Council meetings. *Id*. She attached a copy of the letter that she had sent to

---

[6] Plaintiffs allege in their amended complaint that the proposed financing resolution made it clear that plaintiffs' request pertained to CapFund property located "within" the District. (Amend. Compl., ¶ 22). However, the proposal actually states that plaintiffs sought funding for the "Project," – only a portion of which was located within the District. (Compl., Exh. 5). When an allegation in the complaint is contradicted by an exhibit attached to the pleading, then the exhibit controls. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citation omitted).

LeBlanc regarding LeBlanc's request to be placed on the agendas. *Id*. The letter stated, in pertinent part, that,

> [w]ith regards [sic] to your request for a resolution of the TIF District regarding "the utilization of the Sales Tax Increment Financing Hotel Occupancy Tax," that request is also beyond the authority of the TIF District Board. As you will recall, it was determined at the TIF District meeting in April that all but a small corner of the property at issue is not located within the TIF District. The TIF District simply does not have the authority to operate outside of its boundaries. The statute creating the TIF District permits the utilization of sales tax increment financing of the costs and expenses associated with infrastructure improvements of "all or any portion of the property **located within the boundaries of the district**." La. R.S. 33:9038.66(C)(2) (emphasis added). This statute also authorized the TIF District to "levy and collect a tax upon the occupancy of hotel rooms, motel rooms, and overnight camping facilities **within the area provided for in Paragraph (B)(1) of this Section**" which establishes the physical boundaries of the TIF District. La. R.S. 33:9038.66(F)(1) (emphasis added).

(May 21, 2014, Facsimile Letter from Pam Breedlove to Jules LeBlanc; Def. M/Dismiss, Exh. D-2).[7]

Johnson promptly replied to Breedlove's e-mail by reciting Louisiana Revised Statute § 33:9038.66(B)'s description of Parcel No. 6, and claiming that it was Faith Investments' property. (Compl., ¶ 30; Exh. 9). Johnson maintained that plaintiffs had the right to appear before the Board, and threatened to consider other legal options if they were not permitted to do so. *Id*.

Although plaintiffs' attorney, Ernest Johnson, was not permitted to appear formally before the Board at the June 5, 2014, meeting, he was allowed to address the Board during the public comment period where he took the opportunity to present a copy of the Lincoln Parish Assessor's site map of the Cap Fund's TIF property identified as Parcel No. 18183147002.

---

[7] The court may consider this letter in connection with the instant motion to dismiss because plaintiffs referenced the letter in their complaint, and because the Board's refusal to consider plaintiffs' application for TIF financing is central to their claim. *See Collins, supra.*

(Compl., ¶ 31; Pl. Exh. 11).[8] The two page exhibit depicts Parcel No. 18183147002 as a small triangle of land, without any existing buildings on it. *Id*. The overhead photograph of the site demonstrates the limited size of Parcel No. 6. *Id*.

At the June 5, 2014, Grambling City Council meeting, the City Council donated property located within the special taxing district to the District for purposes of constructing a Marriott Hotel and Legends Square Retail Center Project (the "Marriott Project"). (Compl., ¶ 36; Pl. Exh. 12).

Plaintiffs contend that "the taking of their property and placing it within the TIF district will deny [them] the full use of [their] property because any revenue derived therefrom is subject to taxation by the Defendant with no benefit to the Plaintiffs which in essence restricts the use thereof." (Amend. Compl., ¶ 44).

Plaintiffs further allege that the District violated their right to equal protection and was deliberately indifferent to them because of their status as African-American businesses. (Amend. Compl., ¶¶ 44, 51).

Plaintiffs contend that their proposal for a MainStay Suites Hotel and Annex Complex ("MainStay Suites Project") to be built partially on land within the District is similarly situated to the Marriott and Legends Square Project that was owned by the City of Grambling and transferred to the District or its affiliates. (Compl., ¶ 38). Plaintiffs allege that the District arbitrarily, capriciously, and unreasonably treated their proposal less favorably than the comparable project in which the District enjoys an interest. *Id*., ¶¶ 39-40, 54.

---

[8] According to the statute, Parcel No. 6 was identified by the Lincoln Parish Tax Assessor in 2011 as Parcel No. 18183147002. La. R. S. § 33:9038.66(B)(6).

Plaintiffs further assert that the Board never denied their application, nor did it deny them an opportunity to formally submit a proposal. *See* Amend. Compl., ¶ 58. Instead, unnamed "individuals acting out of "ill will" and racial animus were responsible. *Id*., ¶ 58. Nonetheless, plaintiffs conclude that the District violated their right to due process and equal protection by failing to treat their project the same as all other similarly situated property owners within the District. *Id*., ¶ 60.

### III.     12(b)(6) Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic

9

recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011).[9]

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

---

[9] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

10

**IV.     42 U.S.C. § 1983**

Section 1983 prescribes that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983. However, § 1983 does not create any substantive rights; it merely provides a remedy for the rights designated therein. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted). Thus, "[t]o state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). The first inquiry is whether plaintiff has alleged a violation of a constitutional right at all. *Id. Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

**V.     Due Process Taking Claim**

The court reiterates that, according to plaintiffs, "the taking of their property and placing it within the TIF district will deny [them] the full use of [their] property because any revenue derived therefrom is subject to taxation by the Defendant with no benefit to the Plaintiffs which in essence restricts the use thereof." (Amend. Compl., ¶ 44). Plaintiffs also allege that their due process rights were violated when their property was taken and placed into the taxing district without their consent, prior notice, or a hearing. *Id.*, ¶ 7.

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, directs that private property shall not be taken for public use, without just compensation." *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Parish*, 456 F. App'x 336,

341 (5th Cir. 2011) (citations and internal quotation marks omitted). The Fourteenth Amendment, in turn, provides that "no person shall be deprived of life, liberty, or property, without due process of law." *Id*.

Furthermore, to state a § 1983 claim for a due process violation, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted). However, in the context of a regulatory taking, which arguably is most analogous to the alleged taking in this case, a claim cannot proceed when the plaintiff fails to "allege a complete deprivation of the economically viable use of its property." *Maloney Gaming Mgmt., L.L.C., supra* (citations omitted). In this case, the complaint, as amended, is devoid of such allegations.

Moreover, with respect to plaintiffs' procedural due process claim, the court observes that the creation of the District, and the placement of properties within it, was a legislative act effected by the Louisiana legislature. *See* La. R.S. § 33:9038.66. Procedural due process, however, does not apply to legislative actions. *Jackson Court Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989) (citation omitted). Indeed, "the legislative determination provides all the process that is due." *Buford v. Holladay*, 791 F. Supp. 635, 643 (S.D. Miss. 1992), *aff'd sub nom*. *McMurtray v. Holladay*, 11 F.3d 499 (5th Cir. 1993).[10]

---

[10] The court also notes that the imposition of a Hotel Occupancy Tax on property within the District requires a special election submitting the proposition to the qualified electors for the district for majority approval. La. R.S. 33:9038.66. This ensures another layer of procedural due process.

## VI. Equal Protection Claim

Plaintiffs also allege that the District violated their right to equal protection by arbitrarily and capriciously denying them the right to submit an application and/or the opportunity to appear before the Board to obtain financing for their hotel project.[11] In their original complaint, plaintiffs asserted a "class of one" claim because the District treated them differently than the Marriott Project without a rational basis. In their amended complaint, plaintiffs contend that the District treated them differently on account of their race (African-American).[12] However, because the amended complaint still contains stray language that arguably could support a class of one claim, the court will address both contentions.[13]

The Equal Protection Clause of the Fourteenth Amendment essentially requires a state

---

[11] Plaintiffs do not assert a due process claim with respect to their claim for denial of TIF financing. In any event, "[t]here can be no deprivation of substantive or procedural due process in the absence of a protected property right or liberty interest. *Stark v. Univ. of S. Mississippi*, Civ. Action No. 13-0031, 2014 WL 1235346 (S.D. Miss. Mar. 25, 2014) (citations omitted). Plaintiffs do not identify any protected property right or liberty interest that is implicated here. Moreover, discretionary statutes do not give rise to constitutionally-protected property interests. *Horton v. City of Smithville*, 117 F. App'x 345, 347-48 (5th Cir. 2004) (citation omitted). In addition, "alleging that a city official reached the wrong conclusion on a zoning decision does not implicate the Constitution." *Id*.

[12] There is some question whether a corporate entity has a racial identity at all. The Supreme Court has stated, albeit in dictum, that a corporation has no racial identity, and cannot be the direct target of discrimination. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263, 97 S. Ct. 555, 562 (1977). More recently, at least in the context of 42 U.S.C. § 1981, courts have recognized that "[w]hen a corporation has acquired a racial identity, either as a matter of law or by imputation, then it can be the direct target of discrimination." *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1059 (9th Cir. 2004). In this case, it is not clear that the plaintiff-entities have acquired racial identities. Nonetheless, for purposes of this motion, the court will assume that plaintiffs are African-American entities.

[13] At one point in their amended complaint, plaintiffs seem to shift blame from the Board to unnamed individuals. (Amend. Compl., ¶ 58). If so, then plaintiffs have sued the wrong defendant(s).

13

actor to treat all similarly situated persons alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985). To state an equal protection claim, a § 1983 plaintiff must allege either that "(a) a state actor intentionally discriminated against [him] because of membership in a protected class [,] or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Texas Dep't of Ins. – Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (citations and internal quotation marks omitted). Thus, to survive the pleading stage on a race-based discrimination claim under the Equal Protection Clause a plaintiff must allege facts to show that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *See Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012) (citations omitted).

Here, aside from alleging that plaintiffs are African-American or majority-owned African-American entities, plaintiffs' complaint, as amended, lacks any *factual* allegations to establish that any purported unequal treatment by the District stemmed from discriminatory intent or animus. Plaintiffs do not even allege the racial makeup of their comparator. Accordingly, plaintiffs' complaint fails to state a claim for race-based discrimination under the Equal Protection Clause. *See Bowlby, supra* (no factual allegations that defendants' actions were the result of intentional discrimination); *Smith v. Kimbhal*, 421 F. App'x 377, 379 (5th Cir. 2011) (conclusory assertions of improper motive or retaliatory animus do not suffice to overcome a Rule 12(b)(6) dismissal); *Jabary v. City of Allen*, 547 Fed. Appx. 600 (5th Cir. 2013) (conclusory allegations that defendants undertook their activities because of plaintiff's membership in certain classes failed to state a claim for relief).

Plaintiffs' erstwhile "class of one" claim, however, does not require membership in a protected class or group. *Mata v. City of Kingsville*, TX, 275 F. App'x 412, 415 (5th Cir. 2008) (citation omitted). Further, the Fifth Circuit recognizes three different types of "class of one" claims: "selective enforcement"; "personal vindictiveness"; and adverse zoning permit decisions. *Lindquist v. City of Pasadena, Tex.*, 656 F. Supp. 2d 662, 685 (S.D. Tex. 2009), *affirmed* 669 F.3d 225 (5th Cir. 2012) (citing *Mikeska v. City of Galveston*, 451 F.3d 376, 381 n.4 (5th Cir. 2006)). Only the first two types of "class of one" claims require a showing of improper motive, animus, or ill will. *See Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 388 n.2 (5th Cir. 2008) ("*Lindquist I*") and *Mikeska,* 451 F.3d at 381 n.4.[14]

However, the District's alleged refusal to authorize or even consider plaintiffs' application for TIF financing is most analogous to an adverse permitting decision, which requires plaintiffs to show that they were treated differently than another similarly situated entity/person, with no rational basis for the distinction. *Mikeska, supra*; *Bush v. City of Gulfport, Miss.*, 454 F. App'x 270, 280-81 (5th Cir. 2011). Nevertheless, to prevail on their claim, plaintiffs still "must carry the heavy burden of negativ[ing] any reasonably conceivable state of facts that could provide a rational basis for their differential treatment." *Lindquist I, supra* (citations and internal quotation marks omitted). Further, "[u]nder the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim." *Unruh v. Moore*, 326 F. App'x 770, 772 (5th Cir. 2009) (citation omitted). Indeed,

> states are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude . . . in the local economic sphere, it is only the

---

[14] An element that is lacking in factual support here. *See* discussion, *supra*.

>  invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendmt.

*City of New Orleans v. Dukes*, 427 U.S. 297, 303-04, 96 S. Ct. 2513, 2516 (1976) (citations omitted).

In this case, plaintiffs' complaint fails to set forth requisite facts to support either element of their "class of one" equal protection claim. First, plaintiffs' alleged comparator is the Marriott Project. *See* Compl., ¶ 38. According to plaintiffs, however, the Marriott Project was to be constructed on land formerly owned by the City of Grambling that the City had transferred to the District or its affiliates for purposes of building the Marriott Project. Thus, the City was a partner or participant in the development of the Marriott Project, which furthered the stated purpose of the District's enabling legislation, i.e. to foster "cooperative economic development among the city, the district, the state, owners of property within the district, and other entities . . ." In contrast, there are no allegations that plaintiffs' proposed MainStay Suites Project was a cooperative endeavor with the City.[15]

Furthermore, despite the amendment to their complaint, plaintiffs' proposal to the District acknowledged that their proposed MainStay Suites Project was to be constructed only *partially* on TIF property. (Compl., ¶ 38A). Review of plaintiffs' Exhibit No. 11 confirms that only a small portion of the proposed MainStay Suites Project actually lies within the TIF District. (Compl., Exh. 11). In contrast, the complaint does not contain any allegations that their purported comparator, the Marriott Project, also was to be built on land only partially located

---

[15] Albeit, plaintiffs sought to finance their project via sales taxes and bonds. Moreover, the City will benefit from additional taxes generated, after financing costs.

within the District.[16]

This distinction is material because, according to the enabling statute, "sales tax increment financing" is authorized for "costs and expenses associated with infrastructure improvements **constructed in accordance with the Legends Square Development Plan** for the commercial development of **all or any portion of the property located within the boundaries of the district** as provided for in Subsection H of this Section." La. R. S. § 33:9038.66(C) (emphasis added); *see also* Compl., ¶ 11. Simply put, sales tax increment financing is not authorized to fund development on property located outside the boundaries of the District. This nuance also happens to be the reason why the District did not permit plaintiffs to present their proposed financing ordinance or resolution to the Board. *See* May 21, 2014, Breedlove Letter; M/Dismiss, Exh. D-2.

In response, plaintiffs fail to set forth any argument supported by *facts* to show that the District's stated explanation for its differential treatment of plaintiffs' proposal was irrational or arbitrary. This omission seals the fate of their equal protection claim. *See L & F Homes & Dev., L.L.C. v. City of Gulfport, Miss.*, 538 F. App'x 395, 402-03 (5th Cir. 2013), *cert. denied*, ___ U.S. ___, 134 S.Ct. 1038 (2014) (ordinance's differential treatment of property depending on the use to which the property is put is not irrational); *Jabary, supra* (plaintiff's equal protection

---

[16] Plaintiffs appear to have attempted to remedy the dilemma that the MainStay Suites Project was only partially within the District by constructing a MainStay Suites *Annex* comprised of 12 rooms, which would be strategically positioned entirely within the small triangle of land that plaintiffs own within the District. *See* Compl., Exh. 6. However, there is no indication how this proposal would work in practice, with the MainStay Suites Hotel only collecting taxes on those guests who stayed in the Annex, but not for those rooms located in the main building outside of the District. It also would prove difficult, if not impossible to ensure that funding only directly benefitted the Annex, but not the remainder of the Project.

17

claim is not plausible because there is an "obvious alternative explanation" for the challenged action).[17]

## Conclusion

As instructed by *Iqbal*, the court has accorded no weight to the conclusory allegations set forth in plaintiffs' complaint, as amended. *See Iqbal, supra*. Plaintiffs' remaining allegations contain no facts sufficient to confer plausibility upon their claims. *Id*. Instead, the complaint, as amended, remains no more than "a formulaic recitation of the elements of a cause of action," which does not satisfy the Rule 8 pleading standard. *Id*. Under these circumstances, there is no reasonable expectation that discovery will reveal evidence to support the missing elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Accordingly,

IT IS RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 21] filed by defendant The Grambling Legends Square Taxing District be GRANTED, and that plaintiffs' complaint, as amended, be DISMISSED WITH PREJUDICE, in its entirety. Fed.R.Civ.P. 12(b)(6)

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of

---

[17] Also, in the due process context, the Supreme Court has recognized that a city attorney's directive to the city engineer to withhold a building permit was "eminently rational" where, at the time, the permit would transgress the city charter. *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198-99, 123 S. Ct. 1389, 1396 (2003).

filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 16th day of March 2015.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE